**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 16 2002**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

JEFFREY TUCKER,

        Defendant - Appellant.

No. 01-4150

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:98-CR-425-C)**

---

Thomas M. Gannon, Attorney, Department of Justice, Criminal Division, Appellate Section, Washington, D.C., (Paul M. Warner, United States Attorney, District of Utah; Richard N. Lambert, Assistant United States Attorney, District of Utah, Salt Lake City, Utah, with him on the briefs), for Plaintiff-Appellee.

Deirdre A. Gorman, Ogden, Utah, for Defendant-Appellant.

---

Before **BRISCOE,** Circuit Judge, **BRORBY**, Senior Circuit Judge, and **MURPHY**, Circuit Judge.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

The appellant, Jeffrey Tucker, was convicted of one count of possession of child pornography, 18 U.S.C. § 2252A(a)(5)(B), and sentenced to sixty months' imprisonment.[1]  He appeals his conviction on numerous grounds.  We have jurisdiction under 28 U.S.C. § 1291 and **affirm**.

## II. FACTS

Tucker was convicted in 1990 in Utah state court for sexually abusing a child.  He was paroled by the Utah Department of Corrections in 1996.  As part of his parole agreement, Tucker agreed to "permit agents of Adult Probation and Parole to search my person, residence, vehicle or any other property under my control, without a warrant, at any time, day or night, upon reasonable suspicion to ensure compliance with the conditions of my parole."  He further agreed to "[n]ot view or have in my possession any material exploiting children or depicting unconsensual sex acts or acts involving force or violence."  In another part of the agreement, he agreed to "[h]ave no contact with children under age 18 without the supervision of an adult who is aware of my sexual deviancy."  Finally, he agreed

---

[1] The version of § 2252A(a)(5)(B) under which Tucker was convicted criminalized knowing possession of material "that contains 3 or more images of child pornography."  After Tucker committed the crime, § 2252A(a)(5)(B) was amended to criminalize knowing possession of material containing "an" image of child pornography.  Throughout this opinion, citations to § 2252A(a)(5)(B) are to the older version under which Tucker was charged and convicted.

to "obey all state, federal, and municipal laws." In June 1998, Tucker was still on parole and subject to the parole agreement.

On June 10, 1998, Corina Groneman, a former employee of the United States Bureau of Reclamation ("Reclamation") spoke over the telephone with Officer Ryan Atack of the Salt Lake City Police Department about Tucker. Groneman told Atack that a friend ("friend 1"), who wished to remain anonymous, had received information that Tucker was viewing child pornography on his computer and had contacted a child. According to friend 1, a friend of his ("friend 2"), who also wished to remain anonymous, visited Tucker at his residence. Friend 2 worked at Reclamation, as did friend 1, Tucker, and Groneman.[2] Tucker showed friend 2 child pornography on his computer and informed her that he had met a young girl and might try to arrange another meeting with the child. Groneman never informed Atack of the identity of either friend 1 or friend 2, but she did identify herself and told him she was an employee of the U.S. Attorney's office.

Atack contacted Tucker's parole officer, Ken England, after checking Tucker's criminal history and discovering his parole status. Atack told England that he had received a tip from a citizen that an anonymous individual had seen

_____

[2] Tucker began working at Reclamation after Groneman left to work at the U.S. Attorney's office.

child pornography on Tucker's computer and had been told by Tucker that he was planning a meeting with a young girl. England spoke with his supervisor, Jennifer Bartell, who concluded that they had reasonable suspicion that Tucker possessed child pornography and had contacted a young girl, both in violation of his parole agreement. They decided to conduct a parole search the next day with the assistance of Atack and other officers of the Salt Lake City police department.

On the evening of June 11, 1998, England, Bartell, Atack, and several Salt Lake City police officers searched Tucker's residence. England and Bartell approached the apartment from the front. The screen door on the apartment was closed but the main door was open. Before he entered, England saw Tucker near a computer. England and Bartell entered the apartment. Upon entry, England ordered Tucker away from the computer. Immediately, Detective Rick Gruber, a police officer with expertise in computer crimes, approached the computer. Before taking control of the computer, he noticed that it was connected to the Internet and that Tucker had been visiting a newsgroup[3] labeled "alt.sex.preteen." Gruber ran software on Tucker's computer designed to prevent alteration of the hard drive. He then discovered that a large number of files recently had been

---

[3] A newsgroup is a location on the Internet which, as Detective Gruber testified, "is analogous to a bulletin board where people post messages and they're able to reply, and they're also able to exchange data, exchange documents and images."

deleted from Tucker's hard drive. Gruber ran another program that allowed him to view deleted files, but none of the deleted files he viewed contained pornography. In his investigation of Tucker's Web browser history,[4] however, he noticed that Tucker had visited other newsgroups whose names suggested they contained child pornography. Gruber informed Tucker that technology existed to recover the deleted files. Parole Agent Bartell then asked Tucker "What are we going to find?" Tucker responded, "There's some stuff on there that's going to cause me problems." Bartell ordered the computer seized.

England and Bartell placed Tucker in administrative custody. After receiving *Miranda* warnings and waiving his rights, Tucker told investigators that his computer contained over 5,000 images of children between the ages of ten and twelve engaged in sexual acts and poses. He also acknowledged that he had spoken with a seven year old girl on two occasions, as the anonymous informant,

---

[4] The World Wide Web is one form of communication available over the Internet. It allows computer users "to search for and retrieve information stored in remote computers, as well as, in some cases, to communicate back to designated sites." *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 852 (1997). The information is stored in the form of Web "pages." *See id.* "Web pages frequently contain information and sometimes allow the viewer to communicate with the page's (or 'site's') author. They generally also contain 'links' to other documents created by that site's author or to other (generally) related sites." *Id.* A Web browser is computer software that allows a user to view Web pages. Tucker used two different Web browsers, Microsoft Internet Explorer and Netscape Navigator. Each Web browser keeps a history, or list, of Web pages recently visited by the user.

friend 2, had alleged. Following this interview, Tucker was placed in the custody of the Utah Department of Corrections pending a determination by the Utah Board of Pardons and Parole whether his parole should be revoked.[5]

Based on the information Tucker provided to officers during the search and subsequent interview, Atack prepared an affidavit for a warrant to search Tucker's computer. A state magistrate found probable cause and signed the warrant. Pursuant to the warrant, Special Agent Daniel Hooper of the Utah Department of Public Safety conducted a forensic examination of the computer on July 28, 1998. Using specialized software, Hooper recovered some 27,000 images stored on Tucker's computer. He estimated that of the .jpg[6] images which were viewable, ninety to ninety-five percent were child pornography. Some of those images were very small, called "thumbnail" images, but many were larger images. Hooper recovered files containing child pornography from different parts of the hard drive. Some were located in the Web browsers' cache files.[7] Others were

---

[5] The Board revoked Tucker's parole nearly two years later on February 8, 2000.

[6] Hooper testified that ".jpg" files are a type of image file. Other types include .gif, .bmp, and .art files.

[7] The government's witness, Senior Special Agent Don Daufenbach of the United States Customs Service, testified at trial that a "cache file" is a location on a computer's hard drive that contains "a collection of data images typically that have been gleaned from your travels around the Internet." Daufenbach explained that upon visiting a Web page, a Web browser immediately caches or saves the images on that page in the cache file. If a user selects an image on a Web page in

located in the computer's recycle bin[8] and in "unallocated" hard drive space. Hooper testified that the forensic examination revealed that Tucker accessed the cache files and manually deleted images in the files by dragging them to the computer recycle bin. Hooper rejected the suggestion that Tucker had accidentally run across these images, citing Web browser history files which showed that Tucker repeatedly visited the same sites. Through Hooper, the government also presented an email from Tucker to a Web site operator asking to be given access to pictures of "naked young girls."

Before trial, Tucker moved to suppress the evidence taken in the June 11 search of his apartment and the July 28 search of his computer. He argued that the June 11 search was not supported by reasonable suspicion as required for a parole search. He also argued that the parole search was not conducted to further the purposes of the parole system but was a subterfuge for a law enforcement investigatory search. The district court rejected both arguments. Relying on Utah law, the district court concluded the parole officers had reasonable suspicion. It reasoned that anonymous informants may provide a basis for reasonable

_____

order to enlarge the image, the larger image is also cached. The Web browser automatically caches such images; no act is required of the user. The purpose of caching is to allow already-visited pages to forego the necessity of loading pictures and thus allow visits to these pages to be processed much faster.

[8] The recycle bin is a location on the computer in which a user places files to be deleted.

suspicion, the level of detail in Groneman's tip was high, and Groneman's tip was corroborated by the officers' investigatory work which revealed that Tucker had been convicted of a crime similar to the one alleged in the tip. The district court also concluded the parole search advanced a parole purpose because the tip contained information indicating that Tucker had violated the terms of his parole.

The district court also rejected Tucker's argument that his parole agreement did not authorize seizure of his computer. The district court acknowledged that the parole agreement did not mention seizures but concluded that "seizure of contraband or evidence garnered from a valid parole search is clearly implicit in any parole agreement." Tucker's final Fourth Amendment argument was that the July 28 forensic examination of his computer was not a valid parole search because Tucker was already in custody and the search could not therefore have any parole purpose. The district court rejected the argument, reasoning that Tucker's parole was not yet revoked when Hooper conducted the forensic examination and the officers "had an incentive to compile evidence that he had violated his parole for use at the [revocation] hearing."

After a bench trial, the district court found the defendant guilty. *See United States v. Tucker*, 150 F. Supp. 2d 1263, 1270 (D. Utah 2001). It found that Tucker visited Web sites that displayed child pornography as thumbnail images. *See id.* at 1265. Tucker would often select thumbnail images to enlarge

them.  *See id.*  The district court found that upon visiting a site displaying thumbnail images or upon selecting a thumbnail for enlargement, the images were automatically cached on Tucker's hard drive.  *See id.*  The district court found that Tucker had admitted that he routinely accessed the cached images on his hard drive and deleted them after an Internet session.  *See id.*

The district court concluded that Tucker possessed child pornography under the meaning of 18 U.S.C. § 2252A(a)(5)(B) because he had control over the images cached on his hard drive.  *See id.* at 1267.  The court reasoned that Tucker's habit of manually deleting images from the cache files established that he exercised control over them.  *See id.*  The district court also rejected Tucker's argument that since the Web browsers automatically cached image files without his input, he did not voluntarily possess the images.  The district court reasoned that Tucker visited Web sites for the purpose of viewing child pornography, and that "[t]he images would not have been saved to his cache file had Tucker not volitionally reached out for them."  *Id.* at 1268.  Finally, the district court concluded that Tucker's possession was knowing, since he purposefully visited Web sites containing child pornography knowing that the images would be stored on his computer's hard drive.  *See id.* at 1269.

## III. FOURTH AMENDMENT CHALLENGES

Tucker appeals the denial of his suppression motion.  We view the evidence in the light most favorable to the government and review the district court's factual findings for clear error.  *See United States v. Lewis*, 71 F.3d 358, 360 (10th Cir. 1995).  "We review the district court's ultimate determination of reasonableness under the Fourth Amendment de novo."  *Id.*

### A. Search of Tucker's Home

Generally, the Fourth Amendment prohibits a search of a residence unless it is pursuant to a search warrant supported by probable cause.  *See id.* at 361.  Parole searches pursuant to a valid parole agreement are different, however.  A parole agreement containing a provision allowing the search of a parolee's residence diminishes the parolee's reasonable expectation of privacy in his residence.  *See United States v. Knights*, 122 S.Ct. 587, 591-92 (2001).[9]  Moreover, the state has a heightened interest in monitoring the behavior of a parolee, because, a parolee is more likely to violate the law than an ordinary citizen.  *See id.* at 592.  "[T]hese considerations require no more than reasonable suspicion to conduct a search" of a parolee's home when the parolee is subject to

---

[9] *Knights* involved the search of a probationer's home.  *See United States v. Knights*, 122 S. Ct. 587, 589 (2001).  We have, however, previously treated parolees and probationers identically for Fourth Amendment purposes.  *See, e.g., United States v. Lewis*, 71 F.3d 358, 361 (10th Cir. 1995) (applying probationer precedent in a case involving a parolee).

-10-

a search condition in his parole agreement. *Id.* For the same reasons, a warrant is not required in a parole search. *See id.* at 593.

Tucker contends that all evidence should be suppressed because the June 11th entry into his home was an invalid parole search. In particular, he argues that the search was not supported by reasonable suspicion and that the purpose of the parole search was not to further the goals of the parole system but rather to uncover evidence of new crimes.

*1. The Purpose of the Search*

Tucker contends that parole searches are reasonable under the Fourth Amendment when they are carried out pursuant to state law that itself complies with the Fourth Amendment. Tucker acknowledges that this court has previously determined that the Utah law governing parole searches complies with the Fourth Amendment. *See Lewis*, 71 F.3d at 362. He argues, however, that the search of his residence did not comply with Utah law, which requires that the parole search be "reasonably related to the parole agent's duty." *State v. Johnson*, 748 P.2d 1069, 1072-73 (Utah 1987). This requirement, Tucker contends, was violated because the parole search did not relate to the agents' duty of monitoring Tucker's compliance with his parole conditions but rather was a subterfuge for a criminal investigation.

Tucker is correct that a parole search may be upheld if it is conducted pursuant to a state parole/probation system that itself complies with the Fourth Amendment. *See Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Thus, the search of Tucker's home would be valid if it complied with the Utah requirement that, among other things, the search be conducted for parole purposes. That, however, is not the exclusive avenue by which the search may be deemed reasonable under the Fourth Amendment. A unanimous Supreme Court made clear in *Knights* that a parole search is also valid if reasonable under general Fourth Amendment principles. *See Knights*, 122 S. Ct. at 590, 593. In *Knights*, the Supreme Court, applying general principles, reversed the lower courts' determination that a search of a probationer's home by a police officer for purely investigatory purposes was unreasonable under the Fourth Amendment. *See id.* at 593. Because probationers subject to a search provision in their probation agreement have a diminished expectation of privacy, and because the state has a greater interest in ensuring probationers do not violate the law, the Court concluded that a probation search was permissible so long as supported by reasonable suspicion, regardless of the motivation for the search. *See id.* at 591-93.

Tucker's parole agreement contained a search provision authorizing officers to search his home for a violation of any parole condition. One of those

parole conditions was that he comply with all federal, state, and municipal laws. This case is thus materially indistinguishable from *Knights* in which the probationer's probation agreement authorized searches for any law enforcement purposes. *See Knights*, 122 S.Ct. at 590. Therefore, even assuming that the search was a subterfuge for a law enforcement investigation, it was permissible under general Fourth Amendment principles if the officers had reasonable suspicion that contraband was located at Tucker's residence or that a crime had taken place. As in *Knights*, the officers' motivation is irrelevant.

*2. Reasonable Suspicion*

"Reasonable suspicion is a less demanding standard than probable cause." *United States v. Treto-Haro*, 287 F.3d 1000, 1004 (10th Cir. 2002) (quotation omitted). While probable cause means "a fair probability that contraband or evidence of a crime will be found," reasonable suspicion is merely a particularized and objective basis for suspecting criminal activity. *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotation omitted); *Treto-Haro*, 287 F.3d at 1004. To determine whether the investigating officers had reasonable suspicion,[10]

---

[10] The district court referenced Utah's definition of reasonable suspicion in analyzing the reasonableness of the parole search. A state's definition of reasonable suspicion should be consulted in determining whether a parole search is reasonable when the government seeks to justify the search based on the "special needs" exception, i.e., that the search was conducted pursuant to a state parole system which complies with the Fourth Amendment. *See Lewis*, 71 F.3d at 362. Because we are applying general Fourth Amendment principles and not the

-13-

we consider both the quantity of information possessed by law enforcement and its reliability. *See Alabama v. White*, 496 U.S. 325, 330 (1990). Both factors must be viewed under the totality of the circumstances. *See id.* When the officers' information comes from an informant, reliability may be assessed by viewing "the credibility or veracity of the informant, the basis of the informant's knowledge, and the extent to which the police are able independently to verify the reliability of the tip." *United States v. Leos-Quijada*, 107 F.3d 786, 792 (10th Cir. 1997). Reasonable suspicion may exist, however, on information less reliable than that needed to establish probable cause. *See Treto-Haro*, 287 F.3d at 1004.

Tucker contends that something more than an anonymous tip of illegal activity is required to provide reasonable suspicion. Tucker's general proposition is correct. *See Florida v. J.L.*, 529 U.S. 266, 270 (2000); *White*, 496 U.S. at 329. Groneman was not an anonymous informant, however. While her sources remained anonymous, Groneman was known and could be "held responsible if her allegations turn[ed] out to be fabricated." *J.L.*, 529 U.S. at 270. Such citizen-informants are presumed to be reliable. *See J.B. v. Washington County*, 127 F.3d 919, 930 (10th Cir. 1997). Moreover, friend 2 was not completely anonymous. Groneman confided in Atack that friend 2 was a co-worker of Tucker's.

_____

special needs exception, we look to the federal standard of reasonable suspicion.

Additionally, there was information contained in the tip about the basis of Groneman's knowledge. Groneman explained that she had been told by friend 1 that friend 2, a co-worker of Groneman's at Reclamation, had visited Tucker's house for lunch during a break from a training session or seminar and saw child pornography on his computer.[11] Moreover, the tip was detailed and related the circumstances under which friend 2 was in Tucker's apartment, that Tucker possessed a computer containing child pornography, and Tucker's statements regarding his attraction to young girls. Such detail indicates that friend 2's statement, through Groneman, was reliable. *Cf. United States v. Tuter*, 240 F.3d 1292, 1298 (10th Cir. 2001).

We conclude the parole search was supported by reasonable suspicion. The tip was not anonymous, but came from a citizen-informant. Moreover, it adequately explained the informant's basis of knowledge and was quite detailed. While the police did not corroborate predictive details in the tip, reasonable suspicion may be founded on less reliable information than that required to establish probable cause. *See Treto-Haro*, 287 F.3d at 1004. Consequently, the lack of corroboration is not fatal.

---

[11] Groneman's knowledge was permissibly based on hearsay. *See United States v. Gonzales*, 897 F.2d 504, 507 (10th Cir. 1990) ("The informant's knowledge may be based on hearsay or even double hearsay.").

**B. Computer Search and Seizure**

*1. Validity of the June 11 Computer Search*

Tucker contends that even if the search of his home were permissible, the search of his computer was not. He argues that our decision in *United States v. Carey* establishes that permission to search a residence does not extend to permission to search computer files. *See* 172 F.3d 1268 (10th Cir. 1999). Therefore, he argues, his parole agreement did not authorize officers to search his computer. This is a misreading of *Carey* and Tucker's parole agreement.

In *Carey*, the defendant was suspected of selling illegal drugs. *See id.* at 1270. After an officer threatened to obtain a search warrant for the defendant's house unless he consented to a search, the defendant consented to a search of the "premises and property" located at a particular address. *See id.* The searching officers found two computers they believed contained evidence of drug dealing and seized them. *See id.* The police obtained a warrant to search the computers for evidence of distribution of drugs. *See id.* at 1271. While searching the computers, however, the officers found child pornography. *See id.* at 1270. This court held that the search could not be justified by the defendant's consent to search his house. *See id.* at 1274.[12] As emphasized by the concurrence, our

---

[12] We also held that the search of the computers exceeded the scope of the warrant. *See United States v. Carey*, 172 F.3d 1268, 1272-76 (10th Cir. 1999).

conclusion depended on the specific facts of the case, including the language of the consent agreement and the discussions held between the defendant and police officers. *See id.* at 1276 ("[W]e are quick to note these results are predicated only upon *the particular facts of this case*." (emphasis added)); *id.* at 1276-77 (Baldock, J., concurring). After examining the relevant facts, which indicated that the defendant and the officer seeking consent were discussing a search for drugs, we concluded that the defendant did not consent to a search of his computer for child pornography. *See id.* at 1270, 1274; *id.* at 1276-77 (Baldock, J., concurring).

The search of Tucker's computer is distinguishable. The terms of his parole agreement are much broader. The agreement allowed parole officers to "search my person, residence, vehicle or *any other property under my control . . .* to ensure compliance with the conditions of my parole." (emphasis added). Thus, by its own terms, the parole agreement authorized a search of any of Tucker's property, including the computer. *Cf. id.* at 1274 (concluding that the consent agreement "by its own terms" limited the search to a search of Carey's residence and excluded his computers). The parole agreement also prohibited Tucker from possessing or viewing "any material exploiting children or depicting unconsensual sex acts or acts involving force or violence." Therefore, unlike the consent agreement in *Carey*, which we interpreted as consent to a search for drugs and not

-17-

child pornography, Tucker's parole agreement expressly allowed parole officers to search for any evidence that Tucker violated parole conditions by possessing or viewing child pornography.

*2. Validity of the Seizure*

Tucker also contends that his parole agreement did not authorize the seizure of his computer at the conclusion of the June 11 search. He argues that his parole agreement does not mention seizures and cannot therefore authorize seizures. We need not address Tucker's argument, however, because the seizure was valid under the plain-view doctrine.

Normally, items to be seized pursuant to a warrant search must be particularly described in the warrant. *See United States v. Hargus*, 128 F.3d 1358, 1362 (10th Cir. 1997). We assume without deciding that the same rule applies in the parole search context. One exception to this requirement, however, is the plain-view doctrine. Under that exception, law enforcement may seize items not named in the warrant when three conditions are met. *See United States v. Naugle*, 997 F.2d 819, 822 (10th Cir. 1993). First, the seizing officer must not have "violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Id.* (quotation omitted). Second, the item must be in plain view and its incriminating character must be "immediately apparent." *Id.* (quotation omitted). In other words, upon viewing the object, the

officer must at that moment have probable cause[13] to believe the object to be contraband or evidence of illegal activity. *See id.* at 823. Finally, the officer must have a lawful right of access to the object. *See id.* at 822.

The seizure of Tucker's computer meets these conditions and thus is justified under the plain-view doctrine. First, the officers had reasonable suspicion that Tucker possessed child pornography in violation of his parole agreement and federal law and thus were entitled to search Tucker's home. *See supra* Part III.A. Consequently, they did not violate the Fourth Amendment in arriving at the place, his home, in which the computer was found in plain view. Second, before taking control of Tucker's computer, Detective Gruber noticed it was connected to the Internet and that Tucker had recently visited a newsgroup called "alt.sex.preteen." This information, coupled with Groneman's tip that Tucker showed friend 2 child pornography on the computer, was sufficient to establish probable cause to believe the computer contained child pornography. *See id.* at 823 (observing that probable cause exists when the circumstances would "warrant a man of reasonable caution in the belief that certain items may be

---

[13] Officers were entitled to enter Tucker's home and conduct a search merely upon reasonable suspicion. Arguably, then, they only needed reasonable suspicion that any item viewed was contraband or evidence of illegal activity or parole violations in order to seize it under the plain-view doctrine. We need not decide, however, whether lesser suspicion is required to justify plain-view seizures during a parole search because we conclude *infra* that the officers possessed probable cause.

contraband" or evidence of a crime (quotation omitted)). Finally, the parole agreement gave the officers the right to search any of Tucker's property, including the computer, and, thus, the officers had a lawful right of access to the computer.

### 3. *Validity of the Forensic Examination*

Tucker's final Fourth Amendment argument is that the forensic examination of his computer on July 28, 1998 was unconstitutional. He argues that the justification for a parole search ended after he was taken into custody, since the officers no longer needed to monitor his conduct. Therefore, he maintains, the examination cannot be justified as a parole search. The government responds that Tucker's parole was not officially revoked until February 8, 2000, and that his computer could be searched pursuant to the parole agreement until that time. We need not address the argument, however, because officers procured a warrant to search Tucker's computer. The warrant affidavit recited Groneman's tip, the information found in Gruber's search of the computer on June 11, Tucker's statement on June 11 that the computer contained "things that are going to cause me some problems," and Tucker's interview with officers on June 12 in which he admitted his computer contained around 5,000 images of child pornography. As such, there was more than enough to establish probable cause to believe the computer contained child pornography. The warrant was

valid,[14] and the forensic examination, conducted pursuant to the warrant, was therefore reasonable under the Fourth Amendment.

## IV. KNOWING POSSESSION OF CHILD PORNOGRAPHY

Tucker contends the evidence that he knowingly possessed child pornography was insufficient to support his conviction. We review the sufficiency of the evidence supporting a guilty verdict *de novo*. *See United States v. Carter*, 130 F.3d 1432, 1439 (10th Cir. 1997). We will not disturb the verdict unless no rational trier of fact could have found the defendant guilty. *See id.* This court "must view the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." *United States v. Haslip*, 160 F.3d 649, 652 (10th Cir. 1998).

Tucker maintains that he did not possess child pornography but merely viewed it on his Web browser.[15] He concedes, however, that he knew that when

---

[14]  Below, Tucker argued that the search warrant was overbroad since it authorized a general search of the computer. He does not renew the argument on appeal, and we will not address it.

[15] Tucker makes a related argument that the images he viewed on his Web browser were not child pornography under the statute because they were not "stored" on his computer. 18 U.S.C. § 2252A(a)(5)(B) only criminalizes possession of "child pornography." Child pornography is defined in 18 U.S.C. §2256(8) to be "any visual depiction, including . . . computer or computer-generated image or picture, . . . of sexually explicit conduct" engaged in by minors. "Visual depiction" in turn is defined in § 2256(5) to "include[] undeveloped film and videotape, and data *stored on computer disk* . . . which is capable of conversion into a visual image." (emphasis added). Thus, Tucker argues the images found on his computer cannot be considered a visual depiction

he visited a Web page, the images on the Web page would be sent to his browser

cache file and thus saved on his hard drive. Yet, Tucker contends that he did not

desire the images to be saved on his hard drive and deleted the images from his

cache file after each computer session. There is no merit to this argument.

> 18 U.S.C. § 2252A(a)(5)(B) provides that any individual who
>
> knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains 3 or more images of child pornography that has been . . . transported in interstate . . . commerce . . . shall be punished.

The statute does not define possession, but in interpreting the term, we are guided

by its ordinary, everyday meaning. *See Johns v. Stewart*, 57 F.3d 1544, 1555

(10th Cir. 1995). Possession is defined as "the holding or having something

(material or immaterial) as one's own, or in one's control." Oxford English

Dictionary (2d ed. 1989); *see also United States v. Simpson*, 94 F.3d 1373, 1380

(10th Cir. 1996) (defining "knowing possession" in drug context as encompassing

situations in which an individual "knowingly hold[s] the power and ability to

---

because they were not data actually stored on his computer but only temporarily displayed on his computer monitor. The argument is not convincing. Section 2256 does not require a visual depiction to be stored data. Rather, the definition merely says that one type of visual depiction is data stored on computer. *See id.* § 2256(5) (providing that the definition of visual depiction "*includes* . . . data stored on a computer disk" (emphasis added)). Even if the definition required that a visual depiction be data stored on a computer, the images Tucker viewed were contemporaneously stored on his hard drive when his Web browser saved the images to a cache file.

exercise dominion and control" over the narcotics (quotation omitted)). Tucker contends that because he did not personally save, or "download," the images to his hard drive, he had no control over them. We agree with the district court, however, that Tucker had control over the files present in his Web browser cache files.

Customs Agent Daufenbach testified that an individual could access an image in a cache file, attach it to an email, post it to a newsgroup, place it on a Web site, or print a hard copy. He stated, "Just like as with any other data file, you could do almost anything with it." Agent Hooper similarly testified that an individual could "view [an image in the cache]. He could rename it. He could copy it to a floppy disk. He could email it to somebody. He could modify the file. . . . Anything he could do with any other file he could do with these files." This unrebutted testimony conclusively demonstrates Tucker had control over images stored in his cache and thus possessed them.

Tucker argues, however, that he did not voluntarily cache the files. Rather, he maintains, his Web browser "sav[ed] the images against his will." Tucker likens his situation to the classic case of *Martin v. State*, in which the defendant was charged with appearing drunk in public after involuntarily being carried into public by the police. *See* 17 So. 2d 427, 427 (Ala. Ct. App. 1944). The *Martin* court held that voluntariness was a necessary element to the crime. *See id.* The

-23-

analogy is not apt. The defendant in *Martin* did not drink with the understanding that he would be taken out in public. Tucker, however, intentionally sought out and viewed child pornography knowing that the images would be saved on his computer. Tucker may have wished that his Web browser did not automatically cache viewed images on his computer's hard drive, but he concedes he knew the Web browser was doing so. Tucker continued to view child pornography knowing that the pornography was being saved, if only temporarily, on his computer. In such circumstances, his possession was voluntary. Since he knew his browser cached the image files, each time he intentionally sought out and viewed child pornography with his Web browser he knowingly acquired and possessed the images.[16]

## V. CONCLUSION

Tucker's conviction is **AFFIRMED**.[17]

---

[16] We offer no opinion on whether the mere viewing of child pornography on the Internet, absent caching or otherwise saving the image, would meet the statutory definition of possession. We likewise do not address the question whether an individual could be found guilty of knowingly possessing child pornography if he viewed such images over the Internet but was ignorant of the fact that his Web browser cached such images.

[17] Tucker contends that a conviction under § 2252A(a)(5)(B) for simply viewing child pornography runs afoul of the First, Fifth, and Eighth Amendments. Though not entirely clear from the briefs, Tucker's contention appears to be an as-applied challenge to § 2252A(a)(5)(B). Assuming for the sake of argument that the criminalization of the viewing of child pornography is unconstitutional, Tucker's challenge must fail because he was not convicted for simply viewing child pornography, but for viewing images of child pornography with the

knowledge that the images were thereby saved on his computer. To the extent Tucker presents a facial overbreadth challenge, the briefs do not present a legal argument supported by citation to relevant authority. We will thus not consider the argument.