DENNIS JACOBS, Chief Judge,
dissenting:
I subscribe to Part I of the majority opinion, which holds that Agent Lyons’ affidavit failed to establish a substantial basis for probable cause. As to Part II, however, I conclude that the affidavit was recklessly misleading (at best), and that Agent Lyons — because he was both the affiant and the executing officer — could not rely in good faith on the imprimatur of the district judge. Accordingly, I would reverse the denial of the motion to suppress, vacate Falso’s conviction, and remand for further proceedings.
Judge Sotomayor’s majority opinion says why the affidavit, taken at face value, was insufficient to confer probable cause; and as to that I agree. But in my view the affiant tried to paper over the insufficiency with a statement that is crucial and that is *133 misleading. Therefore, though I agree with Judge Sotomayor that the warrant was signed in error and that an arresting officer may ordinarily rely on such a warrant, I conclude that Agent Lyons, as the affiant of the misleading affidavit could not rely in good faith on the judge’s imprimatur. I draw principles from Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to arrive at the conclusion that the arresting officer cannot rely on a warrant obtained by his own misleading affidavit.
[A]
Agent Lyons’ affidavit sets forth the following salient facts:
[1] The website contained eleven images of child pornography with more images available to persons who joined as members;
[2] New members received an e-mail upon joining;
[3] There were several hundred possible members;
[4] Most collectors of child pornography retain digital images online and seek out like-minded individuals on the internet;
[5] Most such collectors are also sexually attracted to children;
[6] Falso’s name, address, and e-mail address were associated with the website;
[7] It appears that someone with Falso’s e-mail address either gained access to the website, or attempted to do so;
[8] Eighteen years earlier, Falso was convicted for conduct involving sexual abuse of a minor.
The majority of these facts ([1] through [5]) are not specific to Falso, or anyone else. As to [5], the affidavit provided evidence that Falso was sexually attracted to children, but the fact of attraction (of any sexual kind) does not make it more or less likely that a person collects pornography (as the majority opinion explains). As to [4], the observation that collectors of child pornography tend to retain their collections online (and seek out like-minded individuals), puts it backwards: “The alleged ‘proclivities’ of collectors of child pornography ... are only relevant if there is probable cause to believe that [defendant] is such a collector.” United States v. Coreas, 419 F.3d 151, 156 (2d Cir.2005). Thus, the affidavit’s generic assertions “added fat ... but certainly no muscle” to this otherwise “ ‘bare bones’ affidavit.” United States v. Weber, 923 F.2d 1338, 1346 (9th Cir.1990) (quoting United States v. Leon, 468 U.S. 897, 926, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984)).
At most, items [1] through [5] might have established probable cause if conjoined with evidence that Falso collected child pornography. But this is precisely where the affidavit is fatally deficient: it fails to allege the requisite substantial “nexus” between Falso and the website. See United States v. Martin, 426 F.3d 68, 75 (2d Cir.2005). Martin rooted the illegality of possessing child pornography in the “trading” of such material on a website, see Majority Op., supra p. 119 (quoting Martin, 426 F.3d at 75-76), which shows dominion. (This is consistent with the approach of some other circuits.[1]) But *134 Facts [6] through [8] show only that Falso, a pedophile, appeared to have accessed— or appeared to have tried to access — the website, and that his e-mail address was somewhere on it. No evidence suggested that Falso downloaded any image or took any other active steps with respect to the illicit material. Because there was no probable cause to believe that Falso did anything with images of child pornography, the government lacked probable cause to believe that he committed a crime. Therefore, Agent Lyons had need to create the impression that more was known than was known in fact.
[B]
The Fourth Amendment entitles a criminal defendant to a hearing if he or she makes a “substantial preliminary showing” that a “deliberate falsehood” or a statement made with “reckless disregard for the truth” was included in the warrant affidavit, and the statement was “necessary to the judge’s probable cause finding.” United States v. Salameh, 152 F.3d 88, 113 (2d Cir.1998) (per curiam)(internal cites omitted); see Majority Op., supra pp. 125-26 (applying this standard). In Franks v. Delaware, the Supreme Court explained that “[tjhere must be allegations of deliberate falsehood or of reckless disregard for the truth.” 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) (emphasis added). Thus, recklessly misleading statements suffice for Franks purposes. Moreover, “ ‘Franks protects against omissions that are designed to mislead, or that are made in reckless disregard of whether they would mislead, the magistrate.’” United States v. Awadallah, 349 F.3d 42, 68 (2d Cir.2003) (emphasis added; other emphasis in original omitted) (quoting United States v. Colkley, 899 F.2d 297, 300-01 (4th Cir.1990)); see also United States v. Levasseur, 816 F.2d 37, 43 (2d Cir.1987) (“Materially misleading omissions as well as misrepresentations may be challenged by the defense.”). Importantly, “[rjecklessness may be inferred where the omitted information was clearly critical to the probable cause determination.” Rivera v. United States, 928 F.2d 592, 604 (2d Cir.1991) (internal quotation marks omitted).
Agent Lyons’ affidavit contained a recklessly misleading (if not outright deliberately false) statement. Paragraph 31 makes very slippery use of the critical word “subscriber”:
In or about July 2004, Special Agent Todd Gentry reviewed the completed forensic examination of the website hosting www.[]cpfreedom[].com. The forensic examination revealed several hundred possible subscribers along with e-mail addresses and other information. In or about July 2004, subpoenas were served on appropriate ISP’s for each email address identified on the www.fJcpfreedomfJ.com website. In or about September 2004, all subpoena requests were returned to the FBI. Pursuant to a review of the subpoenaed records, the following subscriber information (among others) was associated with the www.fJcpfreedomfJ.com website: David J. Falso, 20 Peaceful Drive, *135 Cortland, New York, Yahoo User ID: cousyl731@yahoo.[ ]com.[2]
Affidavit of James T. Lyons ¶ 31 (emphasis added). The natural reading of these words and the logical inference is that Falso was a subscriber to the illicit website. This misimpression was created by repetition of the word “subscriber” to reference two distinct groups: members of the illicit website (“several hundred possible subscribers”) and members of Yahoo! (“subscriber information”). That misim-pression was set up in the pages immediately preceding this paragraph: Agent Lyons consistently designates Yahoo! members as “users” — at least five times, not once calling them “subscribers”. See id. ¶ 27.
The majority says that, “[cjonsidered in context ... one possible — if not most plausible” way to construe this paragraph is that the “subscriber information” referred to in the last sentence of the quoted passage refers to Yahoo! members, not members of the website. Majority Op., supra p. 127. Maybe so. But, so read, the word “subscriber” would mean two different things within three sentences: the “several hundred possible subscribers” referred to in the first sentence means possible members of the illicit website; the “subscriber information” “associated with” that website (from the third sentence) means Yahoo! members. The majority opinion blandly recites that “Agent Lyons’s affidavit alleged only that Falso was perhaps one of several hundred possible subscribers to the cpfreedom[].com website.” Majority Op., supra p. 120 (emphasis added). But the caveat “possible” is dropped two sentences later: so even an attentive reader of the whole passage gets the impression that Falso’s membership was a fact known to the affiant.
The repetition of the word “subscriber” to reference two types of membership in close textual proximity was consequential: whether a suspect is a member of a child pornography website is important to the probable cause inquiry. See Rivera, 928 F.2d at 604 (“Recklessness may be inferred where the omitted information was clearly critical to the probable cause determination.” (internal quotation marks omitted)).
Judge Livingston considers that “.” Concurring Op. of Livingston, J., supra p. 131. I respectfully disagree: the misleading effect is achieved by artifice that carefully confuses a very important question of fact.
The district court maintained that it was not actually misled; but that is neither here nor there. The test for whether an affidavit contains recklessly misleading or false statements is an objective one. We ask whether a false or misleading statement “was included by the affiant in the warrant affidavit,” not whether the issuing magistrate or district court was misled by it. Franks, 438 U.S. at 155-56, 98 S.Ct. 2674 (emphasis added). Surely, if a district court granted a suppression motion on the ground that the judge had been misled by an affidavit that we judged to be fair, we would not hesitate to reverse.
As the government conceded at oral argument, our review is necessarily confined to the affidavit’s four corners. (We must therefore disregard any litigation backfill, such as the government’s extra-record statement at oral argument, cited by Judge Livingston, that Falso’s e-mail address appeared with a corresponding pass *136 word and username of the type the undercover FBI agent received when he became a member.) Once we excise the misleading statement, see Salameh, 152 F.3d at 113, Lyons’ affidavit establishes no more than that Falso, an individual with a misdemeanor conviction for conduct involving sexual abuse of a minor from eighteen years earlier, clicked on a website containing child pornography, and may have attempted to view it. Assessed in light of “all the circumstances set forth in the affidavit,” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), these three facts blatantly fail the test of probable cause.
[C]
“If a reviewing court determines that a search warrant was not supported by probable cause, a motion to suppress will still be denied if the court finds that the officers who conducted the search acted in good faith reliance on a facially valid warrant.” Id. at 114.
Agent Lyons was both the affiant and the executing officer. Accordingly, it is perhaps “somewhat disingenuous, after having gone to the [district judge] with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the [judge] who made the error and the search and seizure are insulated because the officer’s reliance on that error was objectively reasonable.” United States v. Zimmerman, 277 F.3d 426, 438 (3d Cir.2002).
As the Supreme Court instructs, “suppression is appropriate ... if the officers were dishonest or reckless in preparing them affidavit.” United States v. Leon, 468 U.S. 897, 926, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). This comports with the purposes of the exclusionary rule: it is designed to “deter[ ] some police misconduct and providef] incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment.” Id. at 918-19, 104 S.Ct. 3405. Consequently, the good-faith exception applies only when evidence is seized “in objectively reasonable reliance on” a warrant issued by a detached and neutral judge. Id. at 922, 104 S.Ct. 3405.
The majority says that “the error in this case was committed by the district court in issuing the warrant, not by the officers who executed it.” Majority Op., supra p. 129. I respectfully disagree. Normally, the judge’s imprimatur assures the executing officer that there is probable cause. But where, as here, the executing officer is the same officer who misled the judge, the good-faith exception to the exclusionary rule cannot apply. See, e.g., United States v. Alexander, 740 F.Supp. 437, 448 (N.D.Ohio 1990) (ruling that a fraudulent and “deliberately incomplete” affidavit precluded officer’s reliance on Leon); United States v. Boyce, 601 F.Supp. 947, 954 (D.Minn.1985) (denying good faith defense for an affiant who had, at best, recklessly disregarded the truth by “creating] unmistakable false impressions”).
An executing officer can hardly claim good-faith reliance on a warrant issued by a judge who was mis-directed by the officer himself: the same principle explains why, at a magic show, the credulity of the audience does not cause the magician to fear that the lady has been sawn in half.

. See, e.g., United States v. Romm, 455 F.3d 990, 998-1001 (9th Cir.2006) (upholding conviction for receipt and possession of child pornography recovered from defendant’s computer cache where defendant acknowledged viewing, "saving” and "downloading” the illicit images); United States v. Stulock, 308 F.3d 922, 925 (8th Cir.2002) (noting the district court’s acquittal of defendant of possession charges on the ground that "one cannot be guilty of possession for simply having viewed an image on a web site, thereby caus *134 ing the image to be automatically stored in the browser's cache, without having purposely saved or downloaded the image”); United States v. Tucker, 305 F.3d 1193, 1205 (10th Cir.2002) (affirming conviction for possession of child pornography because defendant "continued to view child pornography knowing that the pornography was being saved, if only temporarily, on his computer” (emphasis added)); see also United States v. Perez, 247 F.Supp.2d at 459 n. 12 (S.D.N.Y.2003) (observing that 18 U.S.C. § 2252A (a)(5)(B) "does not criminalize Viewing’ the images”)

. I have inserted brackets in the cpfreedom website and the e-mail address lest a word processing program automatically convert the terms into hyperlinks that might be inadvertently loaded, with untoward consequences.