**UNITED STATES of America,**

v.

**Benedetto FANTAUZZI, Defendant.**

**No. CR–02–322 (ADS).**

United States District Court,
E.D. New York.

May 8, 2003.

Roslynn R. Mauskopf, United States Attorney Eastern District Of New York, Islip, NY, by James E. Tatum, Jr., Assistant United States Attorney.

Reid, Rodriquez & Rouse, LLP, New York, NY (Gregory L. Reid, Of Counsel), for the Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves charges that the defendant Benedetto Fantauzzi ("Fantauzzi" or the "defendant") possessed child pornography in violation of 18 U.S.C. § 2252A. Presently before the Court is a motion by the defendant to withdraw his plea of guilty pursuant to Rule 32(d) of the Federal Rules of Criminal Procedure.

### I. BACKGROUND

On March 13, 2002, the defendant was indicted on nine counts of possession of child pornography. The indictment stemmed from the government's recovery of numerous images of child pornography from the defendant's computers and evidence that the defendant had visited and become a member of a child pornography-related group on the Internet entitled "The Candyman". The government seized the defendant's computers pursuant to a search warrant issued by United States Magistrate Judge Joan M. Azrack on November 9, 2001. This search warrant was part of a nationwide investigation entitled "Operation Candyman" which investigated members of the Candyman E-group.

### A. Operation Candyman

In early January 2001, Special Agent Geoffery S. Binney of the Federal Bureau of Investigation (the "FBI") joined the Candyman E-group in an undercover ca-

pacity. The Candyman E-group web site stated:

This group is for People who love kids. You can post any type of messages you like too or any type of pics and vids you like too. P.S. IF WE ALL WORK TO-GETHER WE WILL HAVE THE BEST GROUP ON THE NET.

The Candyman E-group had various features: Messages, Files, Polls, Post, Links and Chat. The Files section contained an area where members could post images and video files for other members to download. The Files section permitted members to upload images to the Candyman E-group web site and download images from the web site. The Message section appeared to store all messages and files transmitted to the Candyman E-group.

From January 2, 2001 to February 6, 2001, Agent Binney was a member of the Candyman E-group. During this time, Agent Binney found and downloaded about 100 images and video clips that members had uploaded to the Candyman E-group web site. These images and video clips included images of: (1) prepubescent minors engaged in sexual conduct; (2) nude minors' genitalia; and (3) child erotica, which showed minors posed in provocative ways. Agent Binney also received approximately 498 e-mail messages as a result of his membership in the Candyman E-group. About 288 of these e-mails contained computer files attached with about 105 of them containing child pornography and the remaining 183 depicting child erotica.

In late January 2001, a federal grand jury subpoenaed Yahoo for information including, among other things, a list of the members of the Candyman E-group. Shortly thereafter, Yahoo responded with a list of about 3,397 e-mail addresses of persons who were Candyman E-group members during January 2, 2001 and February 6, 2001.

## B. The Fantauzzi Search Warrant Affidavit

On November 9, 2001, FBI Agent Austin P. Berglas applied for and secured a search warrant for a number of locations, including the defendant's residence at 810 Southside Avenue, West Islip, New York. In his affidavit submitted in support of the search warrant, Agent Berglas presented information based on his own personal knowledge and information provided by other agents in New York and Houston. In his affidavit, Agent Berglas included the information concerning the background of the Candyman E-group and Agent Binney's investigation.

Agent Berglas also noted that in response to the above-noted federal grand jury subpoena, Yahoo provided the e-mail address of *Letts49@aol.com* as one of the Candyman E-group members; that the AOL subscriber account for the e-mail was paid by the defendant at the above-noted address; that the defendant was a member of the Candyman E-group from January 11, 2001 to February 6, 2001; and that Agent Binney's records indicated that the defendant received about 139 images of child pornography, about 77 images of child erotica and 10 videos of child pornography.

## C. The Fantauzzi Prosecution

As stated above, on March 13, 2002, the defendant was indicted on nine counts of possession of child pornography in violation of 18 U.S.C. § 2252A. On July 3, 2002, the government sent a letter to counsel for the defendant informing him that there was an error in the affidavit submitted to Judge Azrack which secured the search warrant executed at the defendant's home. In particular, the government noted that the statement "[e]very Candyman E Group member on the Candyman E-group e-mail list automatically received every e-mail message and other file transmit-

ted to the Candyman E-group by any Candyman E-group member" was incorrect. Rather, members of the Candyman E-group could opt not to receive files transmitted to the group.

On November 22, 2002, the defendant pled guilty to one count of intentional possession of computer files containing child pornography that had been transported in interstate commerce by computer in violation of 18 U.S.C. § 2252A(a)(5)(B). On December 3, 2002, the government sent counsel for the defendant another letter informing him that as a result of the July 3, 2002 disclosure of the error in the affidavit, a *Franks* hearing was held in St. Louis, Missouri where Agent Binney, the lead undercover agent on the Candyman cases, testified. The government informed the defendant that Binney testified at the *Franks* hearing that he subscribed to the Candyman E-group via e-mail, not through the group's website; and that the Director of Yahoo Communities testified before a grand jury that the Yahoo records revealed that Binney subscribed via the group's website and therefore should have known that all members of the Candyman and Girls 12–16 E-groups did not automatically receive all e-mails. Enclosed in that letter were the referenced transcript of the grand jury testimony and the relevant exhibits.

On March 26, 2003, the defendant filed the instant motion seeking to withdraw his guilty plea on the ground that the Court cannot permit his conviction to stand where the evidence against him was seized in violation of the Fourth Amendment to the United States Constitution (the "Fourth Amendment").

## II. DISCUSSION

### A. The Standard to Withdraw a Guilty Plea

■ Where, as here, a defendant moves to withdraw his guilty plea before sentence is imposed, the court may permit withdrawal if he shows "any fair and just reason." Fed.R.Crim.P. 32(d). However, "a defendant has no absolute right to withdraw his plea of guilty," *see United States v. Avellino*, 136 F.3d 249, 261 (2d Cir. 1998), but rather he bears "the burden of persuading the trial court that valid grounds for withdrawal exist." *United States v. Marquez*, 909 F.2d 738, 740 (2d Cir.1990) (citing *United States v. Figueroa*, 757 F.2d 466, 475 (2d Cir.1985)).

■ In deciding whether "any fair and just reason" exists, courts consider: (1) whether the defendant asserts legal innocence; (2) the time lapse between the plea and the motion; (3) whether withdrawal of the plea will prejudice the government; (4) whether the plea was coerced; and (5) whether the motion to withdraw simply represents a "change of heart." *See United States v. Tavarez*, No. 96–895, 2000 WL 1010303, at *3 (S.D.N.Y. July 20, 2000) (citing *United States v. Rivera*, No. 93–568, 1995 WL 564163, at *2 (S.D.N.Y. Sept.22, 1995)); Fed.R.Crim.P. 32 advisory committee's note, 1983 amendment. "[T]he government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir.1997) (citing *United States v. Maher*, 108 F.3d 1513, 1529 (2d Cir.1997)).

■ For the court to permit withdrawal of a guilty plea, the defendant "must raise a significant question about the voluntariness of the original plea." *Id.* (citing *Maher*, 108 F.3d at 1529). The heavy burden required to withdraw a guilty plea reflects society's recognition of the "strong interest in the finality of guilty pleas, and [that] allowing withdrawal of [a] plea[ ] 'undermines confidence in the integrity of our [judicial] procedures ..., increas[es] the volume of judicial work, [and] delays and

impairs the orderly administration of justice.'" *United States v. Sweeney*, 878 F.2d 68, 70 (2d Cir.1989) (quoting *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979)). "'The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit a withdrawal of a plea.'" *United States v. Grimes*, 225 F.3d 254, 259 (2d Cir.2000) (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992)).

## B. Application

### 1. Legal Innocence

The defendant does not claim legal innocence. At his plea allocution, the defendant told the Court that he downloaded child pornography from the Internet. He does not now challenge the truthfulness of this statement. Accordingly, this factor weighs against the defendant.

### 2. Time Lapse

The defendant waited approximately four months (November 22, 2002 to March 26, 2003) to move to withdraw his guilty plea. Four months is a considerable period of delay. *See United States v. Spencer*, 836 F.2d 236, 237–239 (6th Cir.1987) (finding five weeks not prompt enough); *Nunez Cordero v. United States*, 533 F.2d 723, 726 (1st Cir.1976) (finding two weeks not prompt enough). *Cf. Figueroa*, 757 F.2d at 475 (denying motion to withdraw guilty plea where among other things the motion was made almost three weeks after the defendant pled guilty). The defendant presents no viable excuse for his delay in moving to withdraw his guilty plea. Accordingly, this factor weighs against him.

### 3. Prejudice

The government has not shown that it will be prejudiced if the Court withdraws the guilty plea. However, the government does not have to show prejudice until the defendant presents a valid ground for withdrawal of his guilty plea. *Torres*, 129 F.3d at 715.

### 4. Coercion

The defendant does not claim that he was coerced to plea guilty. At his guilty plea, the Court advised the defendant of his rights and the nature of the charges against him. The defendant then stated that his plea was voluntary and done of his own free will:

> The Court: How do you plead to the charge contained in Count 1 of the indictment, guilty or not guilty?
>
> The defendant: Guilty.
>
> The Court: Are you making this plea of guilty voluntarily and of your own free will and accord?
>
> The defendant: Yes, your Honor.
>
> The Court: Has anyone threatened or forced you to plead guilty?
>
> The defendant: No, your Honor.
>
> The Court: Other than the agreement with the Government, has anyone made you any promise that caused you to plead guilty?
>
> The defendant: No, your Honor.
>
> The Court: Has anyone made you any promise about the sentence you will receive?
>
> The defendant: No, your Honor.
>
> The Court: No one can make you such a promise, because I advised you several times I alone will decide upon the proper sentence in this case?
>
> The defendant: Yes, your Honor.
>
> The Court: Mr. Fantauzzi, will you describe briefly, in your own words, what you did in connection with the crime charged in Count 1 of the indictment?

The defendant: I downloaded some child pornography from the internet and stored them on a disk.

(11/22/02 at 8–9).* He does not now challenge the truthfulness of these statements. Accordingly, this factor favors the government.

### 5. Change of Heart

The main reason the defendant now moves to withdraw his guilty plea is his "change of heart" based on a reevaluation of the government's case. He now believes that he can successfully move to suppress the evidence recovered from his home in violation of the Fourth Amendment. However, a "change of heart" after reevaluating the government's case is an insufficient reason to withdraw a guilty plea. *See United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir.1992) ("The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea.") (citing *Figueroa*, 757 F.2d at 475 (denying a motion to withdraw a guilty plea where it "boil[ed] down to a change of heart prompted by a reevaluation of the government's case against him")). Accordingly, this factor favors the government.

■ Four of the five factors—legal innocence, time lapse, coercion and change of heart—weigh against the defendant. Because the defendant has not shown sufficient grounds under this test to justify withdrawal of his guilty plea, the government is not required to show prejudice. As such, the Court finds that no basis exists to permit the defendant to withdraw his guilty plea.

■ The defendant argues that the Court cannot permit his conviction to stand where it results from reckless government conduct that violates his right to be free from unreasonable searches and seizures under the Fourth Amendment. No authority supports this argument. It is well-settled that the defendant's guilty plea waives all non-jurisdictional defects and defenses, including objecting to the constitutionality of the search of his home. *See United States v. Lasaga*, 328 F.3d 61, 63 (2d Cir.2003) ("A defendant who pleads guilty unconditionally admits all elements of the formal charge and ... waives all challenges to prosecution except those going to the court's jurisdiction."); *United States v. Arango*, 966 F.2d 64, 66 (2d Cir. 1992) (noting that the defendant's guilty plea waived his right to challenge the search of his van under the Fourth Amendment).

The defendant rests much of his argument on *United States v. Perez*, 247 F.Supp.2d 459 (S.D.N.Y.2003) which involved charges of possession of child pornography arising out of Operation Candyman. *Id.* at 461. There, prior to any plea, United States District Judge Denny Chin of the Southern District of New York granted the defendant's motion to suppress evidence recovered during the execution of a search warrant. *Id.* at 461. In doing so, Judge Chin first found that the FBI agents who submitted the affidavit for the search warrant acted recklessly by including information from Agent Binney that "all Candyman members automatically received all e-mails, including e-mails that forwarded images of child pornography." He also stated that they "acted recklessly in omitting the information that Candyman members in fact had e-mail de-

* Citations to the transcript of the defendant's guilty plea which took place on November 22, 2002 are referred to by date and page.

livery options." *Id.* at 479. After eliminating the false statement and including the omitted statement, Judge Chin then found that the only fact relevant to probable cause was that the defendant subscribed to a website where images of child pornography could be downloaded and this was insufficient to permit a magistrate judge to decide that a fair probability existed that evidence of child pornography would be found in the defendant's home. *Id.* at 480–81.

*Perez* provides no support for granting the defendant's motion. First, as noted above, the defendant's guilty plea waives his right to challenge the constitutionality of the search of his home. *See Arango,* 966 F.2d at 66 (waiving claim in guilty plea that search of the defendant's van violated the Fourth Amendment). Second, *Perez* involved a motion to suppress evidence, not a motion to withdraw a guilty plea. As such, it does not address the elements necessary to grant a motion to withdraw a guilty plea. Third, no authority permits the defendant to withdraw his guilty plea on the ground that he now wishes to move to suppress evidence when he had the opportunity before he pled guilty. Four and a half months before the defendant pled guilty, the government informed him about Agent Binney's false statement in the affidavit of the search warrant. At that time, the defendant could have moved to suppress the evidence recovered at his home. Instead, he chose to plea guilty to possession of child pornography in full satisfaction of the charges in the indictment. The Court also notes in passing that two weeks after the defendant pled guilty, the government informed him of the *Franks* hearing in St. Louis, Missouri and the grand jury testimony concerning Binney's false statement. Armed with this information, the defendant waited three and a half months before he moved to withdraw his guilty plea.

## III.  CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the defendant's motion to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 32(d) is denied; and it is further

**ORDERED**, that the parties are directed to appear for sentencing on August 1, 2003.

**SO ORDERED.**