F I L E D
**United States Court of Appeals
Tenth Circuit**

**June 29, 2005**

**PATRICK FISHER
Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 04-6049

BRIAN BASS,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 03-CR-90-C)**

Rozia McKinney-Foster, Assistant United States Attorney (Robert G. McCampbell, United States Attorney, on the brief), Oklahoma City, Oklahoma, for Plaintiff - Appellee.

Paul Antonio Lacy, Assistant Federal Public Defender, Oklahoma City, Oklahoma, for Defendant - Appellant.

Before **KELLY**, **BRISCOE**, and **TYMKOVICH**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Defendant Brian Bass was convicted of five counts of knowing possession

of child pornography, 18 U.S.C. § 2252A(a)(5)(B), and sentenced to 37 months

imprisonment and three years of supervised release.  On appeal, he contends (1) there was insufficient evidence to support the convictions, (2) the indictment was deficient, and (3) he is entitled to resentencing in light of the Supreme Court's decision in United States v. Booker, 125 S.Ct. 738 (2005).  We exercise jurisdiction under 28 U.S.C. § 1291, affirm Bass' convictions, but remand with directions to vacate his sentences and to resentence.

I.

Bass lived with his mother, Charlene Partovi, in Enid, Oklahoma.  She owned a computer, which they both shared.  In July 2002, the FBI learned that Bass was a member of an e-group entitled "Candyman,"[1] and that based on this membership, he was likely to be in possession of child pornography.  Tr. 46.  Two agents went to Bass' residence to speak with him, but he was not home.  Four days later, the agents and a detective from the Enid Police Department returned and Bass and Partovi both consented to interviews.

Bass admitted to viewing child pornography on the internet and stated that

---

[1]"Candyman" was a "free Internet service that enabled interested people to collect and distribute child pornography and sexually explicit images of children." United States v. Schmidt, 373 F.3d 100, 101 (2d Cir. 2004).  See also United States v. Perez, 247 F. Supp. 2d 459, 463-65 (S.D.N.Y. 2003) (in-depth description of the Candyman e-group).  The FBI began investigating this group in 2001 in what has been termed "Operation Candyman." United States v. Fantauzzi, 260 F. Supp. 2d 561, 562-63 (E.D.N.Y. 2003).

at some point in the past the computer had a virus that saved such images. An officer asked "if he had ever purposely saved or downloaded or copied any of those images," and Bass stated he had not. Tr. 48. Partovi stated that she had once inadvertently seen a pornographic image on the computer, and that Bass had removed the image at her request. She also gave written consent for the agents to take the computer and conduct a forensic search.

The Enid Police Department conducted the computer forensic search using two programs, "ENCASE" and "SNAGIT." ENCASE recovered over 2000 images of child pornography, and SNAGIT recovered 39 images in the computer's unallocated space, which the program changed from jpeg files (as they existed in Partovi's computer) to .bmp or bitmap files. However, the origin of the images could not be identified–that is, whether the images had been intentionally or automatically saved to the computer from the internet. A file referencing "Candyman" and discussing how to remove information from a computer was also found in the unallocated space; however, again the source was undiscoverable. "Yahoo" and "Tropica" account names were found; the latter account was used to view child pornography websites. Software entitled "Window Washer" and "History Kill" was found, as well as evidence that Swanksoft.com (a site marketing History Kill) had been accessed in between the first two FBI visits to Bass' house.

Bass was interviewed a second time after the computer search. Upon hearing the search findings, he admitted that he had a "morbid curiosity" with child pornography, and that he was intentionally viewing such material. Tr. 54. He also admitted he used Window Washer and History Kill to make sure his mother would not see the images he was viewing. However, he stated that he did not know (1) how to download images from the internet or (2) that the computer was automatically saving the images he viewed. In fact, Special Agent McLemore testified when Bass turned over the computer he stated "[h]e wasn't worried, because he knew he had never saved any photographs to his hard drive . . . ." Tr. 62.

Counts three and five of the indictment identified jpeg files and counts one, two, and four were images recovered by SNAGIT and were identified as .bmp files. Bass moved for judgment of acquittal on each count arguing there was insufficient evidence to find knowing possession and that the indictment was defective because it identified file types that did not exist in the computer but rather were created by the SNAGIT software.[2] The district court denied the motion. Bass' renewed motion at the close of the defense evidence was also denied.

---

[2]SNAGIT is a screen capturing program which takes a snapshot of images recovered from the unallocated clusters of a computer. The program's default setting is to save these snapshots as .bmp files rather than jpeg files.

II.

Sufficiency of the Evidence

At issue here is whether there was sufficient evidence presented to the jury to support Bass' conviction of five counts of knowing possession of child pornography in violation of 18 U.S.C. § 2252(a)(5)(B).[3]  Specifically, we must determine whether there was sufficient evidence presented for the jury to conclude beyond a reasonable doubt that Bass *knowingly* possessed the pornographic images which were found on the computer hard drive.  With regard to the definition of possession, in United States v. Tucker, 305 F.3d 1193, 1204, (10th Cir. 2002), this court stated:

> The statute does not define possession, but in interpreting the term, we are guided by its ordinary, everyday meaning.  [Citation omitted.)  Possession is defined as "the holding or having something (material or immaterial) as one's own, or in one's control."  Oxford English Dictionary (2d ed. 1989); see also United States v. Simpson, 94 F.3d 1373, 1380 (10th Cir. 1996) (defining "knowing possession" in drug context as encompassing situations in which an individual

---

[3]

Any person who– knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer . . . shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a)(5)(B).

- 5 -

"knowingly hold[s] the power and ability to exercise dominion and control" over the narcotics.

"We review sufficiency of the evidence claims de novo, asking only whether, taking the evidence – both direct and circumstantial, together with reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt." United States v. Allen, 235 F.3d 482, 492 (10th Cir. 2000) (internal quotations omitted). "We do not question the jury's credibility determinations or its conclusions about the weight of the evidence." Id.

Bass contends this case presents the second question left unanswered by this court in Tucker – whether an individual can be found guilty of knowing possession of child pornography under § 2252A(a)(5)(B) for viewing such images over the Internet while ignorant of the fact that the images are automatically stored on the computer. In Tucker, the defendant conceded he "knew that when he visited a Web page, the images on the Web page would be sent to his browser cache file and thus saved on his hard drive"; whereas Bass contends he did not know images were being automatically saved. Tucker, 305 F.3d at 1204. However, the jury here reasonably could have inferred that Bass knew child pornography was automatically saved to his mother's computer based on evidence that Bass attempted to remove the images. There is ample evidence that Bass used two software programs, "History Kill" and "Window Washer," in an attempt

- 6 -

to remove child pornography from the computer. Bass admitted he had used both "History-Kill" and "Window Washer" to delete child pornography because "he didn't want his mother to see those images . . . ." ROA, Vol. II at 54. Both programs were installed on the computer when it was searched. Therefore, this case does not differ significantly from Tucker. In both cases, there was sufficient evidence of knowing possession of child pornography.

### Sufficiency of the Indictment

Bass argues counts one, two, and four of his indictment were deficient because they identified images as .bmp files rather than jpeg files, as they existed in his computer.[4] We review indictment sufficiency on "practical rather than technical considerations." United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997). "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." Id.

The images identified in Bass' indictment indisputably came from his computer. The only change that occurred was the file type identification, which was caused by the forensic examiner's software. Otherwise, the numerical

---

[4]Counts one, two, and four of the indictment identified .bmp files. In his argument to the district court, Bass argued that counts one, two, four, and five were deficient. Tr. 158. However, we assume he meant counts one, two, and four.

identification was identical to what existed in Bass' computer, and each count included a description of the image involved. Thus, under a practical analysis, the indictment was sufficient to put Bass on notice of the charges against him.

Sentencing-Booker

Although Bass was convicted of knowingly possessing child pornography, the PSR recommended that he be sentenced pursuant to U.S.S.G. § 2G2.2, which governs offenses involving trafficking in child pornography.[5] ROA, Vol. 5, at 6. Section 2G2.2 establishes a base offense level of 17 for such trafficking offenses (as opposed to a base offense level of 15 imposed under § 2G2.4 for simple possession offenses). The PSR further recommended two upward adjustments to the base offense level: (1) two levels because the material involved prepubescent minors or minors under the age of twelve years; and (2) two levels because a computer was used for transmission of the material. Bass did not object to the

---

[5] Although the PSR recommended the application of § 2G2.2, it did not offer any factual basis for doing so. Instead, the PSR simply stated as follows:
> **Base Offense Level**: The United States Sentencing Commission guideline for violation of 18 U.S.C. § 2252A(a)(5)(B) is found in USSG § 2G2.4. The cross reference to that section indicates that if the offense involved trafficking in material involving the sexual exploitation of a minor (including receiving, transporting, shipping, advertising, or possessing material involving the sexual exploitation of a minor with intent to traffic), apply USSG § 2G2.2. Pursuant to that section, the base offense level [for Bass] is 17.

ROA, Vol. 5, at 6. No other mention is made in the PSR of Bass having trafficked in child pornography.

factual allegations in the PSR and the district court adopted them as its own findings. See Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court . . . may accept any undisputed portion of the presentence report as a finding of fact . . . ."). As a result, Bass' adjusted offense level was 21 with a sentencing range of 37-46 months (as compared to an offense level of 17 and a sentencing range of 24-30 months that would have resulted solely from the jury's findings). The district court sentenced Bass to 37 months of imprisonment on each of the five counts, with the sentences to be served concurrently. In doing so, the district court acknowledged that friends and family members of Bass had written letters asking for leniency, but noted that, "[u]nder our form of sentencing," it was "extremely limited in the amount of discretion that [it] ha[d]." ROA, Vol. 4, at 6.

While this case was pending on appeal, the Supreme Court issued its opinions in Blakely v. Washington, 124 S.Ct. 2531 (1994), and United States v. Booker, 125 S.Ct. 738, 755 (2005). In Blakely, the Court held that in a state prosecution the Sixth Amendment requires that the maximum permissible sentence in a particular case must be determined solely by reference to "facts reflected in the jury verdict or admitted by the defendant." 124 S.Ct. at 2537. In Booker, the "Court extended the logic of Blakely to the Federal Sentencing Guidelines, holding that the Sixth Amendment requires that '[a]ny fact (other than a prior conviction) . . . necessary to support a sentence exceeding the maximum

authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt.'" United States v. Dazey, 403 F.3d 1147, 1174 (10th Cir. 2005) (quoting Booker, 125 S.Ct. at 756). "To remedy this constitutional infirmity created by applying judge-found facts to mandatory sentencing guidelines, the Court severed the provision of the Sentencing Reform Act making application of the Guidelines mandatory." Id.

Immediately following the issuance of Booker, we directed the parties to file supplemental briefs addressing the effect, if any, of Booker on Bass' sentence. In his supplemental brief, Bass now contends the district court violated his Sixth Amendment rights by enhancing his sentence based upon judicially-found facts. Specifically, Bass complains that the district court improperly enhanced his sentence based upon its findings that (1) he engaged in trafficking, as opposed to mere possession, of child pornography, and (2) the material at issue involved prepubescent minors or minors under the age of twelve years.[6]

Because Bass did not raise these issues below, "we review the district court's sentencing decision for plain error." Id. To establish plain error, Bass "must demonstrate that the district court (1) committed error, (2) that the error

_____

[6] Although the district court also imposed a two-level enhancement based upon Bass' use of a computer in the offenses of conviction, that enhancement was supported by the jury's factual findings.

- 10 -

was plain, and (3) that the plain error affected his substantial rights." Id. "If all these conditions are met, a court reviewing the error may exercise discretion to correct it if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

It is beyond dispute that the district court erred in sentencing Bass. As noted by Bass, the district court, applying the then-mandatory Guidelines, enhanced his sentence in two respects based upon judicially-found facts. First, it accepted as a finding of fact the PSR's assertion that the offenses at issue involved trafficking in, rather than simple possession of, child pornography.[7] See

---

[7] Prior to Booker, we regularly held that the "[f]ailure to object to a fact in a presentence report, or failure to object at the [sentencing] hearing, acts as an admission of fact." United States v. Deninno, 29 F.3d 572, 580 (10th Cir. 1994). Whatever the remaining validity of this precedent may be, we are unwilling to conclude that Bass' failure to object operated as an "admission of fact" for purposes of the rights announced in Booker. In other words, we are unwilling to say that Bass' failure to object resulted in a waiver of the Sixth Amendment requirement to "prove[] to a jury beyond a reasonable doubt" that he was involved in trafficking of child pornography. Booker, 125 S.Ct. at 756. See generally United States v. Olano, 507 U.S. 725, 733 (1993) (noting that a waiver involves the intentional relinquishment of a known right); Johnson v. Zerbst, 304 U.S. 458, 464 (1938) (noting that, in order for a waiver to be valid, the party who "waives" must have some degree of personal awareness of what is being relinquished, and the relinquishment must be a matter of personal choice). In reaching this conclusion, we emphasize that this case is distinguishable from United States v. Green, 405 F.3d 1180 (10th Cir. 2005), and United States v. Hahn, 359 F.3d 1315 (10th Cir. 2004), where we held that the decisions in Booker and Blakely did not render the defendants' prior voluntary waivers of their appellate rights in plea agreements unknowing or involuntary. More specifically, defendant Bass simply failed to object to a factual allegation in a presentence report, whereas the defendants in Green and Hahn, as part of their respective plea agreements,

Fed. R. Crim. P. 32(i)(3)(A). That finding in turn triggered the application of §

2G2.2, which required the imposition of a base offense level of 17 (as opposed to

a base offense level of 15 for simple possession offenses). Second, the district

court accepted as a finding of fact the PSR's assertion that the material possessed

(and allegedly trafficked in) by Bass "involved prepubescent minors or minors

under the age of 12 years." ROA, Vol. 5, at 6; see Fed. R. Crim. P. 32(i)(3)(A).

This finding resulted in a two-level enhancement to Bass' offense level pursuant

to U.S.S.G. § 2G2.2(b)(1). In light of Booker, it is clear that "[t]his sentencing

methodology violated [Bass'] Sixth Amendment rights." Dazey, 403 F.3d at

1174.

Although the district court's constitutional error was not "plain" at the time

of Bass' sentencing, it is the law at the time of the appellate decision that is

relevant here. See Johnson v. United States, 520 U.S. 461, 468 (1997) (holding

that "where the law at the time of trial was settled and clearly contrary to the law

at the time of appeal--it is enough that the error be 'plain' at the time of appellate

consideration."). Thus, in light of Booker, the error is now plain. See Dazey, 403

F.3d at 1174-75 (reaching same conclusion in case involving Sixth Amendment

violation).

---

signaled their intent generally to waive their constitutional rights, including the
right to appeal their sentences.

The next question is whether the constitutional error affected Bass' substantial rights, i.e., whether it "affected the outcome of the district court proceedings." United States v. Olano, 507 U.S. 725, 734 (1993). In Dazey, we noted that in cases involving "constitutional Booker error," a defendant can make this showing by demonstrating there is "a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that [the] judge found by a preponderance of the evidence . . . ." 403 F.3d at 1175.

After reviewing the record on appeal, we conclude that Bass has made such a showing. Although the PSR asserted, and the district court in turn found, that the offenses at issue involved trafficking in, as opposed to mere possession of, child pornography, neither the PSR nor the district court offered a rationale for the finding, and there is little evidence in the record to support such a finding. To be sure, the government presented evidence at trial indicating that Bass had been identified by the FBI as a member of the e-group Candyman, and that numerous images of child pornography were found on Partovi's computer. We are not persuaded, however, that such evidence, standing alone, would have been sufficient to allow a jury to find beyond a reasonable doubt that Bass was involved in the trafficking of child pornography. See generally Dazey, 403 F.3d at 1174 (noting that this analysis is conducted "less rigidly" in cases involving

constitutional error).

The final question is whether, under the fourth prong of the plain error test, we should exercise our discretion to correct the district court's plain error. We conclude there are least four reasons why we should do so. First, as noted, Bass' "sentence was the result of a violation of his Sixth Amendment rights." Dazey, 403 F.3d at 1178. Thus, from a procedural standpoint, the "plain error review burden" imposed on Bass is "less rigorous" than it would otherwise be in a case involving non-constitutional error. Id. Second, although we recently stated that "we are less likely to exercise our discretion to notice constitutional Booker error where the defendant failed to contest the judge-found facts on which the sentence was enhanced before the district court," United States v. Dowlin, Nos. 03-8038, 03-8055, 2005 WL 1155882, at *19 (10th Cir. May 17, 2005), we conclude this is a case where we should exercise our discretion to notice constitutional Booker error because of the complete lack of record support for the district court's finding that Bass engaged in trafficking of child pornography. In particular, we note that the evidence presented at trial would not reasonably have allowed a finding of trafficking, and the PSR offered no explanation whatsoever for its conclusory assertion that Bass was subject to a trafficking-based enhancement. Third, the district court's finding that Bass engaged in trafficking of child pornography increased Bass' offense level by two points, which in turn had the

effect of increasing the applicable guideline range from 30-37 months to 37-46 months.[8] See United States v. Villegas, 404 F.3d 355, 365 (5th Cir. 2005) (concluding that, because district court's error increased Guideline-suggested sentence by at least five months, the error seriously affected the fairness, integrity, or public reputation of judicial proceedings). Fourth, the district court imposed a sentence at the bottom of the 37-46 month guideline range, and there are indications in the sentencing transcript that it might have selected a lower sentence had it had the discretion to do so. ROA, Vol. 4, at 6 ("Under our form of sentencing, I am extremely limited in the amount of discretion that I have."). Accordingly, "we believe this plain error warrants our exercise of discretion to remand the case" for resentencing. Dazey, 403 F.3d at 1179.

For the foregoing reasons, we AFFIRM Bass' convictions, and REMAND with directions to vacate his sentences and to resentence.

---

[8] As previously noted, the district court's finding that the material involved prepubescent minors or minors under the age of twelve years resulted in a two-level increase to Bass' offense level and a corresponding increase in his guideline range. Setting aside this enhancement in addition to the trafficking-based enhancement would have resulted in an offense level of 17 and a guideline range of 24-30 months.

No. 04-6049, United States v. Bass

**KELLY**, Circuit Judge, concurring in part and dissenting in part.


While I concur in the court's opinion regarding the sufficiency of the indictment and the Booker analysis, I do not agree with the holding that Mr. Bass was in knowing possession of child pornography beyond a reasonable doubt. The court focuses on the wrong facts and as a result ignores the real issue. The issue is not whether Mr. Bass might have suspected child pornography was somehow embedded in his computer, but whether he knowingly possessed child pornography. The court's decision effectively rewrites the statute to criminalize viewing child pornography via computer.

As the court notes, we review sufficiency of the evidence de novo, "viewing the evidence in the light most favorable to the government and asking whether a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Campos, 221 F.3d 1143, 1151 (10th Cir. 2000). "An act is done 'knowingly' if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason." United States v. Fabiano, 169 F.3d 1299, 1303 (10th Cir. 1999). Possession connotes the ability to exercise control over something. Tucker, 305 F.3d at 1204; Simpson, 94 F.3d at 1380. Thus, knowing possession of child pornography has been found where images were intentionally downloaded to a hard drive or disk, United States v. Lacy, 119 F.3d

742, 749 (9th Cir. 1997), where they were attached to email messages, <u>United States v. Kimler</u>, 335 F.3d 1132, 1140 (10th Cir. 2003), and where the defendant knew images were being automatically saved to his computer and he later re-accessed them. <u>Tucker</u>, 305 F.3d at 1205.

Mr. Bass intentionally sought out and viewed child pornography on the internet; however, none of the established indicators of knowing possession are present. Evidence that he intentionally downloaded child pornography or saved any of the images to disk is non-existent. <u>See</u> Tr. 59-60. He did not attach any child pornography to email. Tr. 132, 142. The evidence also fails to prove that Mr. Bass knew his computer automatically saved the images he viewed on the internet,[1] <u>see</u> Tr.117-18, or that he re-accessed such images after they had been automatically saved. Tr. 132.

Mr. Bass did use the software Window Washer[2] and History Kill, and based on this fact, the court concludes the evidence was sufficient to prove Mr. Bass knew the images he viewed were being stored in his computer and that he was exercising control over them. However, given the record here, this conclusion is pure speculation and allows the factfinder to draw impermissible inferences.

_____

[1] The computer's internet browser automatically saves images viewed on the internet to the hard drive so that frequently visited sites will load faster. Tr. 98-99, 106-10.

[2] The record reflects this program was not installed by Mr. Bass but by his friend, Kyle Osborn, at the time the computer was given to Ms. Partovi. Tr. 183.

United States v. Nichols, 374 F.3d 959, 968 (10th Cir. 2004) ("[W]e may not uphold a conviction obtained by piling inference upon inference, unless each link in the chain of inferences [is] sufficiently strong to avoid a lapse into speculation.") (internal quotations and citations omitted).

In Tucker, we held that because the defendant "knew his browser [automatically saved] the image files, each time he intentionally sought out and viewed child pornography with his Web browser he knowingly acquired and possessed the images." 305 F.3d at 1205. Mr. Tucker intentionally viewed child pornography on the internet and admitted he knew his computer was automatically saving the images he viewed. 305 F.3d at 1204. He also "routinely accessed the [saved] images on his hard drive and deleted them after an Internet session." Id. at 1198. To do this he would access a file and manually drag it to the computer's recycle bin. Id. He did not intentionally download any of the images. Id. at 1199.

Here, no evidence exists that Mr. Bass knew his computer was automatically saving the images he viewed. Whereas Mr. Tucker admitted this knowledge, Mr. Bass only stated that a computer virus had caused his mother to accidently view a pornographic image and that he used the software "in an attempt to clear his computer's registry," Tr. 54, and protect his mother from seeing such images again. Id. at 48, 59. The automatic saving of internet images

- 3 -

is caused by a browser default application and not a virus; however, the government never refuted Mr. Bass's contention regarding the virus. Further, the forensic analyst testified that the computer's registry contains no pictures and that clearing it would not delete automatically saved files. Tr. 137-38. Without something more, the evidence fails to prove beyond a reasonable doubt that Mr. Bass used the software to delete automatically saved files he knew about or to protect against a computer virus or for some other purpose. Likewise, regarding the recovered message discussing how to delete files from a computer, the government failed to provide any evidence that Mr. Bass read it or even knew it existed. Tr. 92. At best, the "Tropica" email address used to access child pornography and Candyman e-group membership show Mr. Bass <u>viewed</u> such material, which he has admitted.

Additionally, the evidence fails to establish that Mr. Bass exercised the same level of control over the images in his computer as Mr. Tucker. Even if Mr. Tucker had not admitted he knew his computer automatically saved internet images, that he manually located, selected, and moved the images demonstrated his knowledge of and ability to control them. <u>Tucker</u>, 305 F.3d at 1203-05. Here, the record is devoid of any evidence showing Mr. Bass re-accessed any of the images in his computer, or that he knew how to do so. The most that can be said is that he exercised general control over all the files in his computer by relying on

software to clean up the hard drive.  This cannot be equated with manually retrieving files and deleting them.

Although reprehensible, <u>viewing</u> child pornography is not a crime.  <u>See</u> 18 U.S.C. § 2252A; <u>see also</u> <u>United States v. Stulock</u>, 308 F.3d 922, 925 (8th Cir. 2002).  Thus, to support a conviction under 18 U.S.C. § 2252A(a)(5)(B) something more than viewing must be proven, and the something more is "knowingly hold[ing the] power and ability to exercise dominion and control."  <u>Simpson</u>, 94 F.3d at 1380 (citation omitted); <u>see also</u> <u>United States v. Mains</u>, 33 F.3d 1222, 1229 (10th Cir. 1994) ("'Knowingly possessed' logically means possessed and knew that he possessed.") (citations and internal quotations omitted).  Simply because  automatically saved files are capable of being accessed and utilized like any other file, if one has the requisite expertise, does not prove that one <u>knows</u> he has such control.  Knowing possession of pornography cannot be established merely by demonstrating that Mr. Bass was ignorant, negligent, careless, or foolish not to have known that downloading files is easy, and material is saved in temporary internet files, as the forensic expert testified.  Tr. 99, 119,  The government had the burden to prove beyond a reasonable doubt that Mr. Bass had subjective knowledge coupled with dominion and control.  Merely because an expert might have known will not substitute for adequate proof.

In a similar context, the Supreme Court instructed that Congress did not

intend to criminalize actions performed out of negligence, even when the act itself was done knowingly. United States v. X-Citement Video, Inc., 513 U.S. 64, 68-69 (1994). In X-Citement Video, Inc., the statute at issue prohibited knowingly transporting, shipping, receiving, distributing, or reproducing child pornography. 18 U.S.C. § 2252. The Court held that to prevent those who knowingly transported such materials but who were unaware of their illegal contents from being convicted, the statute must be construed to require (1) the act of transporting, etc., to be knowing and (2) that the actor have knowledge of the material's contents. This reasoning applies here. Whereas Mr. Bass clearly knew the images were child pornography, the evidence fails to prove that he was aware of the circumstances causing him to be in possession of those images. Knowledge is inextricably bound up with the ability to exercise control, especially in the realm of computers and technology. Thus, the court's leap from viewing child pornography to knowingly possessing it based solely on a computer default operation, without any proof the defendant knew about such operation, establishes a precedent that mere negligence suffices for criminal liability, and casts the net of criminality far wider than Congress provided. I respectfully dissent.

04-6049, <u>United States v. Bass</u>
**TYMKOVICH**, J., concurring in part and dissenting in part.


While I otherwise join the majority opinion, I respectfully dissent as to the remand for resentencing. In my view, Bass's failure to object to the facts used to calculate his Guidelines range fatally undercuts his ability to demonstrate plain error under both the third and fourth prongs.

We have held, "[f]ailure to object to a fact in a presentence report, or failure to object at the [sentencing] hearing, acts as an admission of fact." *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir. 1994). Accordingly, "[u]nder the plain error standard, we will not review the district court's factual findings relating to sentencing, but will review for particularly egregious or obvious and substantial legal error, which our failure to consider would result in a miscarriage of justice." *United States v. Heredia-Cruz*, 328 F.3d 1283, 1288 (10th Cir. 2003) (quoting *United States v. Ballard*, 16 F.3d 1110, 1114 (10th Cir.1994)). That the failure to object constitutes an admission (or, more properly, a waiver) is the logical corollary of our longstanding practice not to review a sentencing court's factual determinations for plain error. *See, e.g., United States v. Saucedo*, 950 F.2d 1508, 1518 (10th Cir. 1991) (holding failure to raise factual issue before district court constituted waiver on appeal) *overruled on other grounds by Stinson v. United States*, 508 U.S. 36 (1993). The reason for this rule is that "when a defendant properly raises the disputed factual issues in the district court, a record sufficient

to permit adequate review is thereby developed.  On the other hand, when a defendant fails to raise the issue below, we have no factual record by which to review the application of the guidelines."  *Id.*; *see also United States v. McCully*, 407 F.3d 931, 933 (8th Cir. 2005) ("a fact in the PSR not specifically objected to is admitted for purposes of *Booker*").

Our precedent in this area rests on Rule 32 of the Federal Rules of Criminal Procedure.  Under Fed. R. Crim. P. 32(i)(3)(A), a sentencing court "may accept any undisputed portion of the presentence report as a finding of fact."  The rule has the salutary purpose of encouraging defendants to point out any alleged factual inaccuracies in the PSR at a time when they can be resolved by the court.  *See* Fed. R. Crim P. 32(i)(3)(B) (requiring court to resolve contested issues at sentencing).  This process serves the common sense goal of encouraging the defendant to speak rather than risk an increased punishment based on inaccurate facts.  The government, as always, retains the burden of proving contested facts, such as that an offense involved trafficking, that may increase the sentence.  *See United States v. Guzman*, 318 F.3d 1191, 1198 (10th Cir. 2003).

Even if the failure to object does not constitute an "admission of fact" for *Booker* purposes, the reasoning supporting the objection requirement is equally applicable to constitutional *Booker* claims in the context of plain error.  Defendants bear the burden of showing the record supports our noticing plain

error.  *See United States v. Dowlin*, 408 F.3d 647, 670 (10th Cir. 2005).  Where a defendant has not contested the judge-found facts on which a sentence is based, we do not have a sufficient record to evaluate the accuracy of the district court's determination of those facts.  This is precisely the concern that has in the past led the court to decline to review factual sentencing claims for plain error.  *See, e.g., Heredia-Cruz*, 328 F.3d at 1288–89; *United States v. Green*, 175 F.3d 822, 837 (10th Cir. 1999); *Saucedo*, 950 F.2d at 1518.  As a result, a defendant who did not object to the sentencing court's factual determinations has failed to establish "a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence."  *See United States v. Dazey*, 403 F.3d 1147, 1175 (10th Cir. 2005).

Furthermore, our post-*Booker* jurisprudence supports application of the objection rule to plain error *Booker* appeals.  *United States. v. Trujillo-Terrazas*, for example, explains that the primary reason *Booker* rendered the Guidelines advisory was concern over judges determining contested factual issues under mandatory Guidelines.  *See* 405 F.3d 814, 818 (10th Cir. 2005) (*Booker* "severed the provisions of the statute making the Guidelines mandatory, not because mandatory sentencing ranges are unconstitutional, but because allowing judges to decide contested questions of fact, pursuant to a preponderance of the evidence standard, is unconstitutional when such fact finding leads ineluctably to a higher

sentence than would be warranted by the facts found by the jury or admitted by the defendant."). *Trujillo-Terrazas* itself found no constitutional error because the judge in that case did not decide contested facts. *Id.* Similarly, in *Dazey* we stressed that the defendant vigorously contested the factual basis for the enhancements as a significant factor leading to a remand. *See* 403 F.3d at 1178.

Accordingly, the rationale supporting the objection requirement applies to *Booker* claims and our precedent supports application of the rule in these circumstances. Thus, it is proper to require a party to object to a factual determination made by a sentencing court before we will review the accuracy of that determination on appeal, even when the fact brought into dispute relates to a constitutional *Booker* claim. The majority does not follow this approach, instead concluding there is insufficient evidence in the record to support the classification of Bass's crime as one involving trafficking despite Bass's failure to properly object to this finding. But the reason the record does not include an explanation for application of the trafficking Guideline is that Bass did not contest the trafficking finding despite having a strong incentive to do so.

Applying plain error analysis to the record before us, I would find Bass has not satisfied his burden. First, he failed to object to the facts that established the Guidelines range. While the majority correctly points out that the PSR did not cite evidence supporting the trafficking designation, Bass found it unobjectionable

when he had every incentive to point out factual deficiencies. Second, although the court sentenced Bass at the low end of the range, there is nothing about his conduct that suggests the court would have sentenced him differently given more discretion. Finally, while the court did comment on the relative lack of discretion under the Guidelines before *Booker*, "it said nothing to suggest that [Bass's] conduct merited a sentence below the prescribed range." *Dowlin*, 408 F.3d at 671; *cf. United States v. Clifton*, 406 F.3d 1173, 1183 (10th Cir. 2005) (remanding constitutional *Booker* error under plain error review where sentencing judge stated "if I had more discretion, I would impose a lower sentence").

In sum, I would conclude that Bass has not satisfied either the third or fourth prong for noticing plain error.